Good morning. If it pleases the court, counsel of the government. I'm representing Antrell Lewis. This is a case out of the Northern District of Iowa. There was a trial in this case. It was a bench trial to the now Chief Judge Leonard D. Strand. This case involved a two-count indictment involving distribution of heroin and frenel fentanyl and also conspiracy to distribute those two drugs. There was a sentencing factor also included in the indictment that alleged serious bodily injury for two individuals and death to a third individual. After bench trial, which took place, the events occurred on the late evening hours of March 2nd, early morning hours of March 3rd, 2016. The bench trial commenced approximately one year later and almost finished to the date of the final events. Judge Strand issued a written ruling at some point, as requested, to make specific findings of fact after previously announcing in court his verdict. He found Mr. Lewis guilty on both counts and also found that the aggravating factor had been proven beyond a reasonable doubt. This thus generated a minimum sentence for Mr. Lewis of 20 years of imprisonment on each count. At time of sentencing, the court did impose a sentence of 252 months on each count, each sentence to be served concurrently. In this case, I think there will be two main facts that I can assert are uncontroverted and favor the defendant in this case. I think these will permeate the nature of the arguments that we will be presenting today. One, the defendant, Mr. Lewis, did not actually have any actual knowledge that the substance that he was involved in distributing contained the analog substance fernal fentanyl. There was no evidence offered by the government to prove that the defendant actually knew the actual concrete substance. It depends on the fact that he sold a product that had a controlled substance that included that ingredient. Correct. I mean, I'm drawing the line, the distinction between distributing the substance, which was probably presumed by my client to be heroin. This is what he had been involved in, and three other sort of contemporaneous sort of transactions in which there were seized drugs and which were analyzed. All of those contained heroin. None of them contained fernal fentanyl or any other sort of control. Is this a conviction argument or an enhancement argument? It's an enhancement sort of issue like that because the distribution, you know, the court has made its ruling on that, that my client did in fact make a distribution. That's a factual decision that even though we have that de novo review with that language of how difficult it is to overcome that, we're not here to argue that that's an incorrect determination, even though we might have some disagreements factually as to what he did in fact distribute. But the court has made its findings, and we are, and the court is going not, this court's not going to reverse those sort of factual findings. You're not here to rejudge the credibility of witnesses, things like that. That's well known and understood. What significance is it that he didn't know that it was fentanyl? I think that goes to the issue of reasonable foreseeability, the issues as to the drugs that he's distributing. If he knows it's heroin, you know, there are certain risks. But fernal fentanyl, and especially in light of the testimony that was offered at trial, and both Dr. Gooden and Dr. Pruitt talking about how much more powerful fernal fentanyl was than heroin, if one knew that one is dealing with that much more powerful of a substance, one would be on more notice and knowledge as to the foreseeability of consequences. We're not talking about a guideline. Foreseeability is a relevant conduct concept in the guidelines. We're talking about a statutory enhancement. Yes, Your Honor. Is there a separate or independent mens rea requirement for an 841B1C enhancement? Well, pre-trial I had filed a pre-trial brief, and I had outlined arguments that I had about some of these issues, including the arguments as to potentially extending Burrage, the U.S.B. Burrage case in proximate cause. It's not extending Burrage. Burrage just is a fact. The substance that was consumed by the victim was a but-for cause of death. Right. It doesn't address mens rea knowingly at all. In the Supreme Court opinion— May I ask my question? Thank you. Are you arguing is there a separate mens rea requirement for this enhancement? The second issue and the issue not decided in Burrage, which was to address the issue of whether or not there is a proximate cause, and the court specifically noted that they were not ruling on that particular issue. And this is a case in which we are then seeking to extend Burrage and seeking to argue for that sort of proximate causation. You know, that's always been interesting to me because my question has been, how do you have a case in which you have a but-for cause, and then there remains a proximate cause question? Because it seems to me that a proximate cause is more remote than a but-for cause. And so I don't quite get that. Once they say that the issue is but-for causation, if you can establish the but-for causation, how does proximate cause still remain alive? Well, in this particular case, some of the argument or part of the argument that we are raising deals with the fact that the drugs that in this case were distributed, they were distributed to Mr. Manning. The question then becomes, did Mr. Manning consume and suffer either the overdose or death? No. It was subsequently in two individuals who overdosed, they got a redistribution of drugs that same evening. And then in the case of the individual who died, it appears that Mr. Manning may have given a portion of those drugs. It still seems to me you're arguing an irrelevancy. What he distributed was the cause of death, whether you call it proximate or but-for or both. And we're going to the issue? Unless somehow there was, for fentanyl, slipped into the heroin by Manning after your client sold it, but that would be inconsistent with the findings. Yeah. And that was part of the factual argument that we're making at trial, but that's not the argument now. But the argument you're making, therefore, has to be, it seems to me, that you have to know that the component of the controlled substance you sold, which was the but-for cause of death, was in the substance. Correct. I would agree if... That's not a causation issue, that's a mens rea issue. Yeah, and more importantly, is there a case anywhere that has ever held that the sale of a tainted controlled substance somehow absolves you of liability because you didn't know that it was tainted? That was my question. Do you have authority for a separate mens rea requirement for the enhancement? Well, I've cited all the authority that I'm aware of on this issue,  however, I would note that in some of the cases, such as I think it's the McIntosh case, that is the case in which the judge specifically instructed the jury on the issue of reasonable foreseeability, and so that would thus leave that issue up to a... Foreseeability is different than knowing. Well, if one... If you know it contains fentanyl, there could still conceivably be an issue, it wasn't foreseeable that it would kill anybody. The defendant's going to lose that almost every time if it does kill somebody. Right. And if the causation requirement of burrage is satisfied. But in effect, the government's position, which I can't find a case that's inconsistent with the government's position, but the position is that the enhancement statute is a strict liability crime, which entails a life sentence, and that, frankly, is kind of troublesome to me. Yes, Your Honor. The only case we found that was close in post-burrage is a Sixth Circuit decision in which it was basically assumed that if the substance sold, which was the same combination as here, resulted in death, that the enhancement applied. Of course, there has to be knowing distribution of a controlled substance, which heroin is. Right, right. But other cases that required the government, to plead a mixture controlled substance in separate counts. I don't think there's published explanation of whether that was required. That would suggest an independent mens rea requirement. But you don't go through the Supreme Court's deciding mens rea cases all the time, usually requiring it. Right. But you haven't argued that aspect. Well, I mean, to the extent he does not have knowledge, I do not believe he would have the mens rea. Well, your argument really has to be there was no finding. Yes. I would say on these facts, if the finding was required, it would have been made, I dare say, which would lead to an interesting question of what we do if my hypothetical issue is controlling. Is there a new trial or what is there? Yes. That is a question I've had in my mind as to the relief that we would be getting as to whether or not the court would either reverse or just remand to the district court to make a determination if it can at this point as to that element. Of course, Mr. Lewis' supplier could have slipped for fentanyl in, and he just thought it was another batch of heroin he was selling. I would assume that's a reasonable assumption. If it was resold by Manning or redistributed by Manning, it could have been a downstream mixing. Right. And I don't want to factually cloud that because I can anticipate the government arguing. I mean, the events I can't anticipate it. I don't know what the government's going to argue because I don't think they've thought about this. Okay. All right. Well, I'm going to reserve a couple more minutes here. Thank you, Aaron. Mr. Chatham. Thank you. May it please the court? Counsel. To address the questions that have been raised by the court as far as mens rea, the answer is there is no separate mens rea requirement for the penalty enhancement in 21 U.S. Code 8.4. You don't have a case for that? Your Honor. I cannot. It's certainly not written into the statute. It's written like a sentencing guidelines enhancement. I think McIntosh is the case that resolves this from 2001. And Judge Hanson's opinion in McIntosh, it pretty clearly lays out that there is no reasonable foreseeability or additional approximate causation standard for that enhancement. And the facts in McIntosh are somewhat illuminative. That was a case where Mr. McIntosh participated. We've had McFadden and Burrage since McIntosh. Correct. Changed the landscape a lot. I don't believe they did. Lost in at least one of the two. I don't believe they did, Your Honor. Now, Burrage specifically declined to rule on the issue of reasonable foreseeability or approximate causation, which leaves McIntosh. Approximate cause. It's a strict liability for a separate violation of a separate provision in the criminal code. It's the penalty enhancement. You call it an enhancement, but it's in there as a, it's in the statutes. It's in the statutes as. So you have to go through the Supreme Court's, whether the Supreme Court differentiates between criminal statutes that are, quote, mere enhancements for mens rea purposes. You haven't done that. Your Honor, I believe McIntosh has answered that question back in 2001. They impose no mens rea requirement, and so there is no, they talked about reasonable foreseeability, which is not knowledge, but there's no statement of knowledge, there's no requirement of knowledge in the statute on the face of the statute itself. It's a penalty enhancement provision that kicks in once the government has proved a violation of Title 21, Section 841A1. And so, in this case, there was a proof of the distribution of some controlled substance. And that is well settled in this circuit and in the Supreme Court acknowledged in the McFadden case, that where an individual distributes a substance that they knew was some controlled substance. They don't need to know the exact nature of the substance. And this court in Ramos also confirmed that. So an individual who sells a white powder that they know to have some sort of controlled substance in it, they are responsible for, and they have sufficient mens rea to be convicted of a distribution of that controlled substance. So if you've distributed a marijuana for smoking purposes and your supplier has snuck strychnine into it, you're liable for the death of your customer. You're strictly liable for the death of your customer. I don't know if strychnine is a controlled substance. If it is, then yes. All right. Take one for fentanyl for that matter. Yes, Your Honor. I believe that the... So if the death-causing agent is not itself a controlled substance, then the enhancement doesn't apply? I believe that's correct, Your Honor. Then a mixture has to be charged separately. No, in that case it would just be a factual problem. If you can't prove that the controlled substance is... Well, I can read the indictment. I can plug my hypothetical into your indictment. I mean, the controlled substance was a mixture of marijuana and strychnine. Yes, so if... And count two, death resulted. In that hypothetical, if marijuana is not what caused the death and that is the only controlled substance, then there would be a failure of proof on the sentencing enhancement because the proof of the crime that was committed, that being a distribution of a controlled substance, specifically marijuana, does not then carry through to the penalty provision. Here, there's a knowing distribution of controlled substances, specifically heroin and furanofentanyl. I just carried one. The indictment, I believe, charged heroin and furanofentanyl. A controlled substance, which was a mixture of heroin and furanofentanyl. I think I just read it this morning. To distribute a mixture or substance containing a detectable amount of heroin and furanofentanyl. That's correct. The mixture or substance in this case was a baggie of about 5 grams. Singular. I think it's factually correct, though, that the mixture that was distributed here contained two different controlled substances. One controlled by virtue of the Controlled Substances Act, heroin is Schedule 1, and the other controlled by virtue of the Analog Act, furanofentanyl. And that's the way McFadden has, and this court's cases in Ramos after McFadden, have termed the knowledge requirement for that. Mr. Lewis was charged with distributing a mixture or substance, one particular baggie, containing both of those, and the use of those substances resulted in the serious bodily injuries and deaths, and death in this case. And per McFadden and per McIntosh, there was no additional requirement that the government prove any foreseeability or knowledge with respect to the sentencing enhancement, that being the death or the serious bodily injury. And I believe Mr. Swift had mentioned something about McIntosh, that the judge instructed on foreseeability. I believe that was actually the Faulkner case that came up after McIntosh, where Judge Jarvey in the Southern District of Iowa, in a conspiracy case, had instructed on foreseeability, and I just wanted to note that there's no foreseeability requirement here. That was a slightly different case, because Faulkner involved more of a Pinkerton liability situation, where Faulkner was not the individual who directly manufactured or directly distributed the substance that resulted in the death of the user. This case is more along the lines of McIntosh, actually right square with McIntosh, that the distribution that occurred here was by Mr. Lewis, and he was directly in the chain. It wasn't a co-conspirator liability situation. So there's no question of foreseeability here. We're dealing with this defendant's acts, his distributions, his sale, and then the consequences of that. If there are no other questions, I believe this case is basically a witness credibility case, which is not really subject to an appellate reversal here. Mr. Manning testified that the drugs that he obtained from Mr. Lewis, he provided to those other individuals. So this is, I believe, pretty straightforward on those facts, and the theory of this case in the law, as found by the district court here, and as ruled by the district court, is supported in this court's precedent and the Supreme Court precedent. Was there some inconsistency, though? Didn't the district court say that there was some evidence that might cast doubt or uncertainty as to the source of the drugs before it then went on to conclude there was sufficient evidence to prove beyond a reasonable doubt? I don't recall specifically that comment. It could have been in there, but I think it's fair to say that Mr. – well, the testimony here was that Mr. Manning, he testified that Jeremy Naderman, one of the other individuals in the car, had a little bit of heroin with him when they got in the car and that they stopped in between Maquoketa and Dubuque, Iowa, used a little bit of that. Mr. Manning and Mr. Naderman specifically used a little bit of that heroin, and then they were on their way to meet Mr. Lewis to get a larger quantity of heroin. And so to the extent there's some evidence that there were some other drugs, that would be it. Mr. Manning had some text messages from days prior where he appeared to be advertising having some sort of heroin for sale. I believe he called it killer, things of that nature. So there's some evidence that, and unsurprisingly, that these drug users had obtained other drugs at other times. But ultimately, this case does come down to the fact that Mr. Manning testified and the district court found him credible with all of the other corroborating information that the drugs that Mr. Kelly and Mr. Van Amburg used were the same drugs that he had just obtained from Mr. Lewis. And circumstantially, the court found that the drugs that Mr. Stearman, who passed away, used were the same drugs that Mr. Manning had obtained from Mr. Lewis and then had provided some to Mr. Naderman, who then gave it to Mr. Stearman. I think you may have... I think there's a... The credibility finding by Judge Strand would foreclose the fact question, right? Yes. And then the subsequent finding is not really a circumstantial finding. It's an inference drawn from the evidence that's been proven that it's the same drugs, right? And that, too, is covered by the fact finding of Judge Strand, right? It is, Your Honor. And here, that circumstantial evidence that I'm talking about, from which the inference was drawn, is the fact that heroin and furanofentanyl is found in the car, in the baggie in the car. It's found in the spoon that was tested in the car. It's found in the powder. Furanofentanyl specifically is found in the powder on the counter. Heroin and furanofentanyl found in the baggie in the kitchen cabinet. And then the toxicology report for Mr. Stearman also had furanofentanyl, and that was the finding that the furanofentanyl is what caused his death. So the evidence here was very strong that this was the drugs that had come from Mr. Lewis that ended up into those individuals. If there are no further questions, I will cede my remaining time and ask that the Court affirm the District Court in all respects. Thank you. Mr. Swift. Thank you. A couple of perhaps random thoughts, but I wanted to follow up in terms of some of the findings of Judge Strand. In terms of the conspiracy, there's really no showing of conspiracy involving my client and Mr. Manning. There's no evidence of all the prior transactions involving my client. All the prior transactions involving my client and Mr. Manning had been very small transactions. There was a finding or statement by Judge Strand that he presumed that a couple of the smaller transactions where he may have been fronted may have been situations where he had to gather the money from either himself or others from that. But he used the word presume. I've kind of looked up the definition of that. I don't think that's a finding beyond a reasonable doubt there. In fact, we presume things because we think they are, but we're not certain. I think it's an accurate definition, so I wanted to kind of address that. If you're talking about a conspiracy to distribute Fernell Fentanyl, then it must involve my client and other individuals, and there's no evidence in the record as to an agreement between my client and others to distribute Fernell Fentanyl. That wasn't required by the indictment. It was a conspiracy to distribute a mixture or substance that included a controlled substance component that was a but-for cause of death. There's no requirement that the government prove a conspiracy to distribute Fernell Fentanyl. Well, the issue becomes when Judge Dr. Gooden identifies Fernell Fentanyl as the drug that caused the death of the individual. And so when you get down to the analysis in that situation, I think you have to look to the fact that they didn't prove that the death, and that's why conviction may upstand, but not necessarily the element as to causing a sentencing enhancement. But on the sentencing enhancement, you'd still be looking at the statute, and it'd be knowingly and intentionally distributing a controlled substance that results in death. And I'm having a hard time with the leap on the mens rea that all of a sudden we're going to get to the point that it's got to be, that you've got to know what the substance is. Isn't it just sufficient if you know it's a controlled substance and that controlled substance causes death? I think individuals who are facing a 20-year mandatory minimum should be in a position of requiring the government to prove that. Well, given the percentage of heroin on the streets today that is laced with Fernell Fentanyl, at the end of my tenure as a district judge, I would guess that 75% of the cases I saw were mixture cases. I mean, you're going to have to show that the person who's buying these drugs knows that there's Fentanyl in it? Well, it's not my position to educate the government on how to prove their cases, I guess, as to what they might ask, but I can think of a series of questions that I might potentially ask as a way of helping, seeking to establish that an individual knew that it was more than just heroin. Okay. Thank you. Thank you, counsel. The case has been well briefed and argued, and we'll take it under advisement.